```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/23/2025
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Federal Insurance Company,

                            Plaintiff,

-against-

MSC Mediterranean Shipping Company S.A.,

                            Defendant.

1:23-cv-08870 (SDA) (consolidated with 1:23-cv-11128 (SDA) and 1:24-cv-01902 (SDA))

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Plaintiff Federal Insurance Company (hereinafter "Plaintiff" or "Federal") sued Defendant MSC Mediterranean Shipping Company S.A. ("Defendant" or "MSC") in three now-consolidated actions in this Court as subrogated cargo insurer having paid the insurance claim of Chatham Imports, Inc. ("Chatham") for non-delivery, shortage and loss to certain liquor shipments carried by MSC. (*See* 1st Compl., 23-CV-08870 ECF No. 1, ¶¶ 2-3, 9; 2d Compl., 23-CV-11128 ECF No. 1, ¶¶ 4, 11-12; 3d Compl., 24-CV-01902 ECF No. 1, ¶¶ 4, 9.[1]) In each of the three actions, one of the affirmative defenses raised by MSC is that, because the nature and valuation of the goods were not declared by the shippers before the shipment and inserted in the bill of lading, any recovery by Federal should be limited to $500 per "package" or "customary freight unit" in accordance with the Carriage of Goods by Sea Act ("COGSA") and the relevant contracts of carriage. (Am. Answer, 23-CV-08870 ECF No. 19, ¶ 28; Answer, 23-CV-11128 ECF No. 13, ¶ 60; Answer, 24-CV-01902 ECF No. 9, ¶ 47.)

---

[1] The plaintiff in the 3d Complaint initially had been named as Chatham but by stipulation Federal later was substituted as plaintiff. (8/7/24 Stip. & Order, 24-CV-01902 ECF No. 20.)

Pending before the Court is MSC's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment (based upon the foregoing affirmative defense) to establish that its liability in the consolidated actions is limited to a total of $30,000 (*i.e.*, 60 pallets times $500). (Def.'s 2/28/25 Not. of Mot., 23-CV-08870 ECF No. 48; *see also* Def.'s 2/28/25 Mem., 23-CV-08880 ECF No. 52, at 1.) For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND FACTS[2]

Federal, the plaintiff in each of the consolidated lawsuits, is the subrogated cargo insurer which paid the insurance claims of Chatham. (Def.'s 56.1 ¶ 1; Pl.'s 56.1 ¶ 1.) Chatham was at all material times the ex-works[3] purchaser, owner and intended consignee of the shipments of mezcal liquor that are the subject of the lawsuits (the "Shipments"). (*Id.*) MSC, the defendant in each of the consolidated lawsuits, is a multimodal common carrier of cargo for hire, which contracted to transport the Shipments. (Def.'s 56.1 ¶ 2; Pl.'s 56.1 ¶ 2.) MSC contracted to provide multimodal carriage of the Shipments from Mexico City to New York by way of Veracruz. (Pl.'s 56.1 ¶ 3; Def.'s 56.1 ¶ 3.)

The contracts of carriage upon which Federal's lawsuits are based are bills of lading and a seaway bill issued by MSC in connection with the Shipments, *i.e.*, MSC Bill of Lading No. MEDUX5278304, MSC Bill of Lading No. MEDUX5326012 and MSC Sea Waybill No.

---

[2] The facts set forth herein are drawn from the parties' respective Local Civil Rule 56.1 Statements (Def.'s 56.1, ECF No. 49; Pl.'s 56.1, ECF No. 57), as well as documents filed by the parties as part of the summary judgment record.

[3] "Ex-work is a term used by the International Chamber of Commerce, and indicates that 'the seller delivers when it places the goods at the disposal of the buyer at the seller's premises.'" *Rosenshine v. A. Meshi Cosms. Indus. Ltd.*, No. 18-CV-03572 (LDH), 2020 WL 1914648, at *3 (E.D.N.Y. Mar. 30, 2020) (citation omitted).

MEDUX5390844. (*See* 1st Compl., 23-CV-08870 ECF No. 1, ¶ 2); 2d Compl., 23-CV-11128 ECF No. 1, ¶ 11; 3d Compl., 24-CV-01902 ECF No. 1, ¶ 9.)

MSC Bill of Lading No. MEDUX5278304 names Chatham as consignee and states in the "Description of Packages and Goods" that "2016 CASE(S) OF MEZCAL, BOTTLES OF 750 ML" are being shipped and that the "TOTAL NUMBER OF PACKAGES" is "2,016." (Ex. K to Azevedo Decl., 23-CV-08870 ECF No. 51-11, at PDF p. 2; *see also* Ex. G to Azevedo Decl., 23-CV-08870 ECF No. 51-7, at PDF p. 2 (draft).) The Bill of Lading states: "IN ACCEPTING THIS BILL OF LADING THE MERCHANT EXPRESSLY ACCEPTS AND AGREES TO ALL THE TERMS AND CONDITIONS, WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON THIS SIDE AND ON THE REVERSE SIDE OF THIS BILL OF LADING AND THE TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE TARIFF AS IF THEY WERE ALL SIGNED BY THE MERCHANT." (*Id*.) At the top of the page, the document states in the English language, as well as other languages, "See website for large version of the reverse[,]" followed by the website citation "www.msc.com." (*Id*.) Centered at the very bottom of the page appears the language in block capital letters: "TERMS CONTINUED ON REVERSE[.]" (*Id*.) There is no "DECLARED VALUE" listed in the bill of lading. (*See id*.) In the box indicating the number of packages or containers received by MSC is listed "1 cntr[,]" signifying one container. (*Id*.; *see also* Azevedo Decl. ¶¶ 30-31.)[4]

MSC Bill of Lading No. MEDUX5326012 names Chatham as consignee and states in the "Description of Packages and Goods" that "2016 CASE(S) OF MEZCAL, BOTTLES OF 750 ML" are

---

[4] The Court declines to strike or disregard the MSC declarations as requested by Plaintiff. (Pl's 4/8/25 Opp. Mem. at 18-22.) The Court does not refer to the Werner Declaration and references the Azevedo Declaration only to the extent that it provides additional information about the Bills of Lading/Sea Waybills, which the Court finds is neither legal argument nor inadmissible hearsay.

being shipped and that the "TOTAL NUMBER OF PACKAGES" is "2,016." (Ex. G to Azevedo Decl. at PDF p. 3 (draft).)[5] The Bill of Lading states: "IN ACCEPTING THIS BILL OF LADING THE MERCHANT EXPRESSLY ACCEPTS AND AGREES TO ALL THE TERMS AND CONDITIONS, WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON THIS SIDE AND ON THE REVERSE SIDE OF THIS BILL OF LADING AND THE TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE TARIFF AS IF THEY WERE ALL SIGNED BY THE MERCHANT." (*Id*.) At the top of the page, the document states in the English language, as well as other languages, "See website for large version of the reverse[,]" followed by the website citation "www.msc.com." (*Id*.) Centered at the very bottom of the page appears the language in block capital letters: "TERMS CONTINUED ON REVERSE[.]" (*Id*.) There is no "DECLARED VALUE" listed in the bill of lading. (*See id*.) In the box indicating the number of packages or containers received by MSC is listed "1 cntr[,]" signifying one container. (*Id*.)

MSC Sea Waybill No. MEDUX5390844 names Chatham as consignee and states in the "Description of Packages and Goods" that "2016 CASE(S) OF MEZCAL" are being shipped and that the "TOTAL NUMBER OF PACKAGES" is "2,016." (Ex. K to Azevedo Decl. at PDF p. 3; *see also* Ex. G to Azevedo Decl. at PDF p. 4.) The Sea Waybill states: "IN ACCEPTING THIS SEA WAYBILL THE SHIPPER EXPRESSLY ACCEPTS AND AGREES TO, ON HIS OWN BEHALF AND ON BEHALF OF THE CONSIGNEE, THE OWNER OF GOODS AND THE MERCHANT, AND WARRANTS HE HAS AUTHORITY TO DO SO, ALL THE TERMS AND CONDITIONS WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON THIS AND ON THE REVERSE SIDE AND TERMS AND CONDITIONS OF THE

---

[5] Because the loss was discovered while the shipping container still was in the terminal, no final bill of lading ever was issued for this shipment. (*See* Azevedo Decl., ECF No. 51, ¶ 41.)

4

CARRIER'S APPLICABLE TARIFF AS IF THEY WERE ALL SIGNED BY THE SHIPPER." (*Id*.) At the top of the page, the document states in the English language, as well as other languages, "See website for large version of the reverse[,]" followed by the website citation "www.msc.com." (*Id*.) Centered at the very bottom of the page appears the language in block capital letters: "TERMS CONTINUED ON REVERSE[.]" (*Id*.) There is no "DECLARED VALUE" listed in the sea waybill. (*See id*.) In the box indicating the number of packages or containers received by MSC is listed "1 cntr[,]" signifying one container. (*Id*.)

The terms and conditions for MSC's bills of lading and sea waybills, which are found on MSC's website, contain the following provisions:

> 6.1 Notwithstanding the provisions of clause 5, for carriage to or from any port of the United States, its territories or possessions, or if suit is brought in the United States, this Bill of Lading shall have effect subject to the provisions of the COGSA and to the provisions of the Pomerene Act regardless of whether said Act would apply of its own force. The provisions of the COGSA are incorporated herein and save as otherwise provided herein shall apply throughout the entire time the Goods are in the Carrier's custody, including before loading and after discharge as long as the Goods remain in the custody of the Carrier or its Subcontractors, including cargo carried on deck. Nothing contained herein is to be deemed a surrender by the Carrier of its rights, immunities, exemptions or limitations or an increase of any of its responsibilities or liabilities under the COGSA. . . .
>
> 6.2 For limitation purposes under the COGSA,[6] it is agreed that the meaning of the word "package" shall be any palletised and/or unitised assemblage of cartons which has been palletised and/or unitised for the convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the front hereof.
>
> . . .
>
> 7.2.2 Where COGSA applies by virtue of clause 6, neither the Carrier nor the Vessel shall in any event be or become liable in an amount exceeding US$500 per package or per customary freight unit.

---

[6] MSC's bill of lading terms and conditions contain a typographical error and erroneously use the term "GOGSA" instead of "COGSA." (*See* Ex. I to Azevedo Decl., 23-CV-08870 ECF No. 51-9, at PDF p. 6.)

> 7.3 The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods. Higher compensation than that provided for in this [Bill of Lading] [Sea Waybill] may be claimed only when, with the written confirmation of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated by the Carrier in the box marked "Declared Value" on the front of this [Bill of Lading] [Sea Waybill] and ad valorem charges paid. In that case, the amount of the Declared Value shall be substituted for the limits provided in this [Bill of Lading] [Sea Waybill].[7] . . .
>
> . . .
>
> 10.3 Jurisdiction - It is hereby specifically agreed that any suit by the Merchant, and save as additionally provided below any suit by the Carrier, shall be filed exclusively in the High Court of London and English Law shall exclusively apply, unless the carriage contracted for hereunder was to or from the United States of America, in which case suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply. . . .
>
> . . .
>
> 14.1 This [Bill of Lading] [Sea Waybill][8] shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition, except as otherwise noted, of the total number of Containers or other packages or units indicated in the box entitled "Carriers Receipt" on the front hereof.
>
> 14.2 No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, temperature, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

(Ex. I to Azevedo Decl. at PDF pp. 5-7, 9; Ex. J to Azevedo Decl. at PDF pp. 7-8, 10, 12; *see also*

Azevedo Decl. ¶¶ 28, 51.)

---

[7] MSC's bill of lading terms and conditions use the term "Bill of Lading" in Section 7.3, whereas MSC's sea waybill terms and conditions use the term "Sea Waybill." (*Compare* Ex. I to Azevedo Decl. at PDF p. 6 *with* Ex. J to Azevedo Decl., 23-CV-08870 ECF No. 51-10, at PDF p. 8.)

[8] MSC's bill of lading terms and conditions use the term "Bill of Lading" in Section 14.1, whereas MSC's sea waybill terms and conditions use the term "Sea Waybill." (*Compare* Ex. I to Azevedo Decl. at PDF p. 9 *with* Ex. J to Azevedo Decl. at PDF p. 12.)

Each of the three Shipments consisted of 2,016 cases of mezcal which were placed on 20 pallets. (Pl.'s 56.1 ¶¶ 7, 9; Def.'s 56.1 ¶¶ 7, 9.)

**LEGAL STANDARDS**

I. **Partial Summary Judgment**

Under Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a). A court should grant summary judgment on a claim or defense "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In other words, a court should grant summary judgment to a party if the facts in the record could not support any outcome other than victory for that party." *Berbick v. Precinct 42*, 977 F. Supp. 2d 268, 273 (S.D.N.Y. 2013).

"In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted). "Material" facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the "pleadings, depositions, answers to

7

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotations omitted). If the movant meets this burden, the nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

## II. COGSA

"COGSA represents the codification of the United States' obligations under the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, August 25, 1924, 51 Stat. 233." *J.C.B. Sales Ltd. v. Wallenius Lines (Wallenius Lines N. Am. Inc.), In Personam*, 124 F.3d 132, 134 (2d Cir. 1997). "This convention, which is also known as the Hague Rules, was the culmination of a multinational effort 'to establish uniform ocean bills of lading to govern the rights and liabilities of carriers and shippers *inter se* in international trade.'" *Id.* (quoting *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 301 (1959)). "Among the more prominent features of COGSA is its limitation of liability in the event of damage to or loss of cargo to '$500 per package . . . or . . . per customary freight unit . . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.'" *Id*. (quoting 46 U.S.C. App. § 1304(5)).

A package under COGSA is "a class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods." *Allied Int'l Am. Eagle Trading Corp. v. S.S. Yang Ming*, 672 F.2d 1055, 1057-58 (2d Cir. 1982); *accord Hercules OEM Grp. v. Zim Integrated Shipping Servs. Ltd.*, No. 22-CV-02636 (JLR), 2023 WL 6317950, at *8 (S.D.N.Y.

8

Sept. 28, 2023). The question of what constitutes the COGSA package "is largely and in the first instance a matter of contract interpretation." *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 485 (2d Cir. 1985) (citing *Yang Ming*, 672 F.2d at 1057, 1061). "The most obvious place" to look first for "the intent of the contracting parties is, of course, the bill of lading." *Id*. (citing *Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam, Her Engines, Boilers, Etc., Nedlloyd Lijnen B.V. (Nedlloyd Lines)*, 759 F.2d 1006, 1012 (2d Cir. 1985)).

The Second Circuit has "long accepted that a pallet may, under appropriate circumstances, be deemed to be a package." *Allied Chemical Int'l Corp.*, 775 F.2d at 485 (citation omitted). "This may be so even where the containers on the pallet themselves constitute ordinary commercial units." *Id*.

## DISCUSSION

In its partial summary judgment motion, MSC contends that, because the terms and conditions of the bills of lading and sea waybill issued by MSC upon which Plaintiff's claims are based included contractual provisions limiting MSC's liability to $500 per package, with the pallets constituting the relevant package, MSC's liability in the consolidated cases is limited to $30,000 (60 pallets times $500). (*See* Def.'s 2/28/25 Mem. at 1.) The Court agrees.

Plaintiff is Chatham's subrogee (*see* Def.'s 56.1 ¶ 1; Pl.'s 56.1 ¶ 1) and therefore stands in the shoes of Chatham and is subject to MSC's defenses against Chatham. *See Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992) ("Since an insurer-subrogee stands in the shoes of its insured, any defenses that are valid against the insured are also applicable against the insurer."). The defense upon which MSC relies in its partial summary judgment motion is that, because the nature and valuation of the goods were not declared by the shippers before the

shipment and inserted in the bill of lading, any recovery by Plaintiff should be limited to $500 per package or customary freight unit in accordance with COGSA and the bills of lading and sea waybill. (*See* Def.'s 2/28/25 Mem. at 1-7.)

To determine what constitutes the COGSA package in this case, the Court looks to the terms and conditions of the bills of lading and the sea waybill that were issued to Chatham. While it is true, as Plaintiff emphasizes (*see* Pl.'s 4/8/25 Opp. Mem., ECF No. 55, at 7-10), that Chatham listed 2,016 cases of Mezcal and 2,016 packages in the Description of Packages and Goods on the relevant contracts of carriage, the terms and conditions that form part of the contracts unambiguously make clear that, "[f]or limitation purposes under [COGSA]" the parties "agreed that the meaning of the word 'package'" was "any palletised and/or unitised assemblage of cartons which ha[d] been palletised and/or unitised for the convenience of the Merchant, regardless of whether said pallet or unit [was] disclosed on the front [of the contracts]." (Ex. I to Azevedo Decl. at PDF p. 6; Ex. J to Azevedo Decl. at PDF p. 8.) Because it is undisputed that each of the three Shipments were placed on 20 pallets when they were shipped (*see* Pl.'s 56.1 ¶¶ 7, 9; Def.'s 56.1 ¶¶ 7, 9), the Court finds that the COGSA packages in this case consisted of the 20 pallets. Therefore, under COGSA, because Chatham did not declare the value of its Shipments in the contracts of carriage (and pay the ad valorem taxes that would have been attendant thereto), Plaintiff's recovery in this case is limited to $500 per package. *See* 46 U.S.C. App. § 1304(5).

Plaintiff seeks to avoid the provisions of the terms and conditions on the reverse side of the contracts of carriage by asserting that these terms and conditions were not provided to Chatham, its subrogor. (*See*, *e.g.*, Def.'s 56.1 ¶ 4) (stating that contracts of carriage were "issued to MSC's booking customer without the reverse side terms and conditions").) However, the Court

finds, as a matter of law, that the foregoing terms and conditions are binding on Plaintiff for two reasons.

First, the bills of lading and sea waybill expressly provide that the Merchant (*i.e.*, Chatham) "ACCEPT[ED] AND AGREE[D] TO ALL THE TERMS AND CONDITIONS, WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON [THE FRONT] SIDE AND ON THE REVERSE SIDE" of the documents. (Ex. G to Azevedo Decl. at PDF pp. 2-4; Ex. K to Azevedo Decl. at PDF pp. 2-3.) The reverse-side terms and conditions in fact were "otherwise incorporated" into the contracts of carriage. Each of the contract of carriage states at the top in the English language, as well as other languages, "See website for large version of the reverse[,]" followed by the website citation "www.msc.com" and entered at the very bottom of the page appears the language in block capital letters: "TERMS CONTINUED ON REVERSE[.]" (*Id.*)[9]

Second, Plaintiff itself relies on the reverse-side terms and conditions in bringing suit in this Court. MSC is a Switzerland-based entity. (*See* 1st Compl. ¶ 4; 2d Compl. ¶ 6; 3d Compl. ¶ 5.) Plaintiff invokes the "forum selection clause" contained in "MSC's terms and conditions" in bringing suit in the Southern District of New York. (*See* 1st Compl. ¶ 6; 2d Compl. ¶ 3; 3d Compl. ¶ 3.) The forum selection clauses in MSC's terms and conditions are contained as part of the reverse-side terms and conditions (Ex. I to Azevedo Decl. at PDF p. 7; Ex. J to Azevedo Decl. at

---

[9] It also is noteworthy that immediately above the sections of the contracts of carriage upon which Plaintiff principally relies, wherein Chatham inserted that there were 2,016 packages, appears the language in block capital letters: "PARTICULARS FURNISHED BY THE SHIPPER - NOT CHECKED BY CARRIER - CARRIER NOT RESPONSIBLE - See Clause 14" (Ex. G to Azevedo Decl. at PDF pp. 2-4; Ex. K to Azevedo Decl. at PDF pp. 2-3), and Section 14.2 of the reverse-side terms and conditions (which is part of Clause 14) provides that "[n]o representation is made by [MSC] as to the weight, contents, measure, quantity, quality, description, condition, temperature, marks, numbers or value of the Goods and [MSC] shall be under no responsibility whatsoever in respect of such description or particulars." (Ex. I to Azevedo Decl. at PDF p. 9; Ex. J to Azevedo Decl. at PDF p. 12.)

PDF p. 10), the same sets of terms and conditions that contain the relevant COGSA package limitation provisions. (Ex. I to Azevedo Decl. at PDF p. 6; Ex. J to Azevedo Decl. at PDF p. 8.) Obviously, Plaintiff cannot pick and choose which reverse-side terms and conditions are applicable and which are not. Plaintiff is bound by all the terms and conditions of the contracts of carriage upon which its lawsuits are based. *See Fubon Ins. Co. v. OHL Int'l*, No. 12-CV-05035 (RJS), 2014 WL 1383604, at *9 (S.D.N.Y. Mar. 31, 2014) ("Courts in this circuit and elsewhere acknowledge that a party suing on a bill of lading consents to the terms of that bill of lading.") (collecting cases).

In sum, the Court finds that the "palletised . . . assemblage" of Mexcal cartons in this case refers to the 60 pallets on which the Shipments were loaded. *See Hercules OEM Grp.*, 2023 WL 6317950, at *9 (where terms and conditions reverse side of bill of lading stated that, "[f]or limitation purposes under . . . U.S. COGSA, it [was] agreed that the meaning of the word 'package' shall be any palletized and/or unitized assemblage of cartons which has been palletized and/or unitized for the convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the front hereof", holding that pallets were relevant "package[s]" despite front side of bill of lading only referring to cartons); *accord HDI Glob. Ins. Co. v. Kuehne + Nagel, Inc.*, No. 23-CV-06351 (LJL), 2025 WL 444992, at *1 (S.D.N.Y. Feb. 10, 2025) (holding, following bench trial involving similar clause, that it constituted agreement that pallets were relevant "package[s]" under COGSA). Moreover, Defendant's liability is limited to $500 per pallet under COGSA, since Plaintiff did not declare a different value for the shipments. *See* 46 U.S.C. App. § 1304(5).

**CONCLUSION**

For the foregoing reasons, Defendant's motion for partial summary judgment is GRANTED and Defendant's liability in the consolidated actions is limited to a total of $30,000 (*i.e.*, 60 pallets times $500).

**SO ORDERED.**

Dated:   New York, New York
         May 23, 2025

_____
STEWART D. AARON
United States Magistrate Judge